IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHEILA M. BARKER                                              PLAINTIFF

v.                      Civil No. 10-2069

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                 DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sheila Barker, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on August 1, 2006, alleging an onset date of October 15, 2005, due to the residuals of retinitis pigmentosa, headaches, obesity, depression, and anxiety. Tr. 89-96, 132, 146, 148, 150, 159. Plaintiff's applications were denied initially and on reconsideration. She then requested an administrative hearing, which was held on July 8, 2008. Tr. 6-40. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 37 years of age and possessed a high school education. Tr. 10, 55-56. She had past relevant work ("PRW") experience as a cashier, nurse aide/housekeeper, and restaurant worker. Tr. 133, 167-171, 178. Plaintiff

indicated that she currently worked at a KFC/Taco Bell taking orders, running the register, and clearing tables. Tr. 11, 18.

On September 24, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's retinitis pigmentosa and obesity did not meet or equal any Appendix 1 listing. Tr. 51-52. She found that plaintiff maintained the residual functional capacity ("RFC") to perform a range of light work not requiring excellent vision or frequent field of vision. The ALJ also indicated that Plaintiff should work where good lighting was provided; must avoid walking on uneven surfaces; must avoid cluttered walking surfaces or areas where agility was required; could only occasionally climb ramps; should not climb scaffolds, ladders, ropes, or stairs; should not be exposed to unprotected heights or moving machinery; should not work near boiling water, hot surfaces, or deep hot oil fryers; and, must not be required to drive as a part of her work activities. Tr. 52-55. With the assistance of a vocational expert, she then determined Plaintiff could still perform work as a convenience store clerk/cashier. Tr. 56-57.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 15, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 10, 11.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

AO72A
(Rev. 8/82)

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Evidence Presented:

Plaintiff testified that she suffered from retinitis pigmentosa and experienced problems with tunnel vision, difficulty seeing dark colors, and problems with night vision. Tr. 19. Her depth perception was also interrupted and she had no peripheral vision. Tr. 19. This reportedly caused her great difficulty when trying to descend steps/stairs, walk on uneven surfaces, and steer around other obstacles in her path. Tr. 22.

Records dated prior to the relevant time period indicate that Plaintiff received annual eye exams. Tr. 182-184, 187-190, 194. She consistently complained of decreased visual acuity, blurriness, and flashes of light, and was diagnosed with myopia with astigmatism and retinitis pigmentosa. The records also indicate that Plaintiff's vision had deteriorated over the years. Tr. 182-184.

On February 16, 2006, Plaintiff underwent a vision exam. Tr. 181. She stated that she was not seeing well with her current prescription. Tr. 181.

On February 27, 2006, Plaintiff complained of blurred central vision, "almost completely blurred out," rendering her unable to see objects at arms length even with her glasses. Tr. 185-186, 191-192. Her eyes were reportedly watering a lot and she was also experiencing headaches.

Dr. Everett Moulton's exam revealed the possibility of retinitis pigmentosa, so he referred her for further testing. Tr. 185.

The following day, Dr. Moulton requested that Dr. Amar Safar consult on Plaintiff's case. Tr. 193. In a letter to Dr. Safar, he indicated that Plaintiff had recently presented with progressively worsening blurred central vision in both eyes. He relayed the symptoms Plaintiff had reported to him on February 27, and noted that her best corrected visual acuity was measured at 20/40 in the right eye and 20/30 in the left, reduced to 20/400 in both eyes with glare testing. A slit lamp exam had been unremarkable with the exception of trace central cataracts. A fundus exam had revealed what appeared to be thinning of the retinal pigment epithelial ("RPE") in the posterior pole in both eyes with occasional areas of pigmentary clumping. Visual field testing indicated total blackness with the exception of a small temporal island of peripheral vision. He felt Plaintiff had retinitis pigmentosa and requested that Dr. Safar conduct further testing with electroretinography ("ERG") and electrooculography ("EOG") studies. Due to her lack of funds, he requested that Plaintiff be part of Dr. Safar's teaching program, if available. Tr. 193.

On April 27, 2006, Plaintiff was evaluated by Dr. Bradley Hughes at UAMS. Tr. 217-219. He noted that her vision field test was abnormal and she had a history of difficulty with side vision and night vision. Dr. Hughes agreed with Dr. Moulton's diagnosis of retinitis pigmentosa, and ordered ERG and EOG studies to confirm. Tr. 217-219.

On June 15, 2006, Plaintiff reported no new complaints. Tr. 210. She requested a copy of her most recent test results. Dr. Hughes indicated that ERG and EOG studies were consistent with retinitis pigmentosa, as was her exam. Tr. 211-216. He advised her to return to the clinic

5

in six months, recommended she wear sunglasses, and referred her for genetic counseling and a low vision evaluation.  Tr. 210.

On August 17, 2006, Plaintiff followed up with Dr. Hughes at UAMS.  Tr. 209.  She reported continued problems with flashing lights at night and migraine headaches.  Dr. Hughes diagnosed her with retinitis pigmentosa, astigmatism, and cataracts in both eyes.  She was advised to wear sunglasses and to return for monitoring in four to six months.  Tr. 209.

On September 7, 2006, Plaintiff was evaluated by Dr. Richard Harper at UAMS Medical Center for retinitis pigmentosa and underwent a low vision rehabilitation exam.  Tr. 198-208.  Her complaints included problems with detail, night blindness, light/dark adaptation, depth perception, glare, contrast, and field loss.  She was noted to have a severe vision impairment.  However, she was able to perform many of the requested activities with minimal assistance required.  Her areas of greatest concern seemed to be activities requiring reading or writing.  Tr. 198-208.

On October 26, 2006, Dr. Gary Felker completed a consultative eye exam.  Tr. 220-222.  He reviewed her records from both Drs. Moulton and Hughes and then conducted an independent exam.  He found Plaintiff to have visual field limitations in both eyes, more so in the left than right, with some pigment changes in the later periphery in both eyes.  Although he did not believe this to be a classic-type case, he noted this was not unusual for a variant of retinitis pigmentosa.  Based on the findings of her vision tests and the ERG, he concurred with a diagnosis of retinitis pigmentosa.  He stated that, assuming Dr. Hughes' assessment is correct, Plaintiff certainly had impaired vision with less than ideal central acuity with high myopia and

quite a bit of astigmatism, as well as greatly impaired visual fields. Her best corrected vision was 20/40 in the right eye and 20/30 in the left. Tr. 220-222.

**IV.    Discussion**:

Plaintiff contends that the ALJ erred in his credibility findings and the vocational expert ("VE") erred as to the jobs she could perform based on the parameters listed in ALJ's hypothetical question. We will begin with an evaluation of the ALJ's credibility findings. When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing her reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies

AO72A
(Rev. 8/82)

between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting her determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record does make clear that Plaintiff was suffering from retinitis pigmentosa. "Retinitis pigmentosa is a slowly progressive, bilateral degeneration of the retina and retinal pigment epithelium caused by various genetic mutations. Symptoms include night blindness and loss of peripheral vision." *See* THE MERCK MANUALS ONLINE MEDICAL LIBRARY, *Retinitis Pigmentosa*, *at* www.merckmanuals.com (Apr. 28, 2011). Plaintiff has reported a lack of peripheral vision, limitations in depth perception, problems with tunnel vision, difficulty seeing dark colors, and problems with night vision. For the most part, her symptoms have been verified by eye examinations and laboratory tests confirming her diagnosis of retinitis pigmentosa. And, we agree with the ALJ's conclusion that this impairment is severe and does interfere with her ability to perform work-related activities. It does not, however, support her contention of total disability.

We note that, in spite of Plaintiff's claim of total disability due to these symptoms, she has continued to work part-time as a convenience store clerk. "Seeking work and working at a job while applying for benefits are activities inconsistent with complaints of disabling pain." *Dunahoo*, Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); *Wiseman v. Sullivan*, 905 F.2d 1153, 1156

8

(8th Cir. 1990) (search for work and finding part time employment is inconsistent with disability). Even as here, where the work the claimant is performing does not rise to the level of substantial gainful activity, it does provide evidence that she is able to perform some work. *See* 20 C.F.R. § 404.1571. Coupled with Plaintiff's own admission that she would work more than 15 to 20 hours per week if given the opportunity, we believe this evidences her ability to perform full-time work on a sustained basis and negates her claim of total disability due to her vision impairments.

  The ALJ also concluded that Plaintiff's obesity had a more than minimal effect on her ability to do basic work activities and was therefore severe. She further determined that Plaintiff's obesity could reasonably limit her ability to walk, stand, balance, lift, and carry and could have adverse effects on other body systems. Although there is no medical evidence to indicate that Plaintiff sought treatment for complications related to her obesity, we agree with the ALJ's findings in this regard. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). It is reasonable to conclude that Plaintiff's obesity would impact her ability to perform work-related activities.

  Plaintiff has alleged disability due to migraine headaches and depression and anxiety. However, we can find only one record indicating that Plaintiff complained of headaches, and no evidence she was ever treated for or diagnosed with depression and anxiety. *Id.*; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). In fact, the only medications

9

Plaintiff has admitted taking are birth control pills, iron supplements, Tylenol and Headache PM. Tr. 27, 140. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Further, Plaintiff did not report missing work or not being able to perform other activities due to these impairments. Therefore, we do not find them to be severe. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001) (Plaintiff has burden of burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities).

      Plaintiff's reported activities also undermine her claim for disability.  On an adult function report completed in August 2006, Plaintiff reported the ability to get her son ready for school, walk him to the bus stop, get herself ready for work, care for her personal hygiene, prepare sandwiches and frozen dinners, do the laundry, go outside daily, ride in a car, go out alone, shop in stores for food and clothing, handle a savings account, use a checkbook/money orders, read poetry, read her horoscope, work puzzles, star gaze, talk to others in person and on the phone, attend church, and visit her Mom. Tr. 141-148. Plaintiff also continued to work part-time as a convenience store clerk/cashier, in spite of her alleged vision impairments. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir.

1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities do not support plaintiff's claim of disability.

Plaintiff contends that the ALJ failed to make express credibility determinations explaining why he did not fully credit her subjective complaints. We disagree. The ALJ's opinion makes clear that she accepted Plaintiff's subjective reports of symptoms related to her visual impairment, but did not find the medical evidence or evidence concerning Plaintiff's activities of daily living to support Plaintiff's contention of total disability. Therefore, although it is clear that plaintiff suffers from some degree of impairment, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's determination that plaintiff had the RFC to perform a range of light work not requiring excellent vision or frequent field of vision. The ALJ also indicated that Plaintiff should work where good lighting was provided; must avoid walking on uneven surfaces; must avoid cluttered walking surfaces or areas where agility was required; could only occasionally climb ramps; should not climb scaffolds, ladders, ropes, or stairs; should not be exposed to unprotected heights or moving machinery; should not work near boiling water, hot surfaces, or deep hot oil fryers; and, must not be required to drive as a part of her work activities.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

11

404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians. On November 6, 2006, Dr. Alice Davidson reviewed Plaintiff's medical records and concluded that she could perform light work that does not require excellent peripheral vision or work near hazards such as machinery or heights. Tr. 225-232. This assessment was affirmed by Dr. Steve Owens on March 14, 2007. Tr. 233.

After thoroughly reviewing the evidence of record, we find substantial evidence to support the ALJ's RFC assessment. The ALJ carefully crafted the RFC to include limitations arising from Plaintiff's retinitis pigmentosa and her obesity. She discussed Social Security Ruling 02-1p dealing with obesity and laid out the functional limitations likely to be imposed by obesity. The ALJ also detailed the visual limitations Plaintiff reported experiencing and those

outlined by her doctors, and included them in the RFC. Accordingly, the RFC assessment will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform work that exists in significant numbers in the national economy. The vocational expert testified that a person with Plaintiff's RFC could perform work as a convenience store clerk/cashier. Tr. 33. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

Plaintiff contends that the VE's testimony is in stark contradiction to the Dictionary of Occupational Titles because the position identified by the VE requires frequent near acuity, which is defined as clarity of vision at 20 inches or less. *See* DICTIONARY OF OCCUPATIONAL TITLES §211.462-010, *at* www.westlaw.com (Apr. 28, 2011). However, Plaintiff's argument appears to be based on an erroneous interpretation of the ALJ's RFC findings. She seems to be under the impression that the ALJ concluded that she could not perform activities requiring frequent near acuity when in actuality, the ALJ found she could not perform tasks requiring "excellent vision or *frequent* field of vision." There was no finding with regard to Plaintiff's near acuity. And, it does not seem to the undersigned that clarity of vision at 20 inches or less would qualify as excellent vision. Further, in reviewing the position description contained in the DOT, we note that this position does not require field of vision, color vision, depth perception, or far acuity. *Id*. Therefore, we find no merit in Plaintiff's argument.

Given the fact that Plaintiff continued to work part-time as a cashier and perform the exact duties described in the cashier position identified by the VE, we do not find error in the VE's conclusion that Plaintiff could perform this position. Accordingly, we believe substantial

13

evidence supports the ALJ's conclusion that Plaintiff could still perform work as a convenience store clerk/cashier.

V.    **Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of April 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE